Municipality of Ponce, Etc., Plaintiff and Appellant, *v.* Monserrate Collazo, Defendant and Appellee.

No. 8025.   Argued December 6, 1939.—Decided April 19, 1940.

*R. Hernández Matos* for appellant.   *Ramón A. Gadea Picó* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an action of unlawful detainer which was decided against the plaintiff.

The plaintiff alleged that it owed a 5-cuerda piece of rural estate on which two houses stood and that the defendant had

been in occupation thereof for more than one year without paying any rent or consideration, "being a tenant at sufferance of said estate against the will of the plaintiff municipality."

The defendant denied in his answer that the estate in question belonged to the plaintiff or that he was a tenant at sufferance. As special defenses he alleged that there was no privity or contractual obligation between the plaintiff and the defendant that might be dissolved by the action, and that between the plaintiff and Cruz Montes in whose house defendant was living there was pending an action for the nullity of mortgage foreclosure proceedings in connection with the estate referred to in the complaint.

On February 13, 1939, the court dismissed the complaint. In support of its judgment the court delivered an opinion from which we will transcribe as follows:

"From the admissions contained in the answer of the defendant and from the evidence submitted by both sides and weighed as a whole, the court makes the following findings:

"The Municipality of Ponce, as the holder of a mortgage credit upon the estate known as 'Olga' described in the 2nd paragraph of the complaint in the unlawful detainer action, instituted mortgage foreclosure proceedings against Cruz Montes, with the result that the Olga estate was sold at public auction and awarded to the Municipality of Ponce, all of which appears from public deed No. 24 executed on March 28, 1936, in Ponce before notary Rafael Atiles Moreu by the marshal of the district court. (Exhibit A of plaintiff.)

"Said Olga estate had belonged, until its adjudication, to Cruz Montes, the mother-in-law of Monserrate Collazo who has lived with her since before the execution and adjudication of said Olga estate to the Municipality of Ponce.

"Defendant Monserrate Collazo does not pay any rent or consideration to the municipality for the possession of the said Olga estate. He has been unsuccessfully requested by the municipality to vacate the said estate.

"It has also been shown that there is an action pending for the nullity of the said mortgage foreclosure proceeding, (case No. 10629 of this district court), brought by Cruz Montes against the Municipality

of Ponce. The complaint in the instant unlawful detainer proceeding was not filed against Cruz Montes but against her son-in-law and companion Monserrate Collazo.

"Section 2 of the Unlawful Detainer Act of 1905 reads as follows:

" 'Sec. 2. The action of unlawful detainer will lie against the tenants, settlers (colonos), and other lessees of property, and against the administrators, agents, keepers, or guards placed in charge of the property by the owner thereof, or any other person who retains the material possession thereof or enjoys the same by sufferance, without paying any rental or other consideration whatever.'

"In *Correa* v. *Correa*, 32 P.R.R. 254, the Supreme Court of Puerto Rico expressed itself as follows:

" 'The defendant is not a tenant, settler or lessee of the plaintiff. Nor did she place him in charge as administrator, agent, keeper or guard of the property in question. Can it be said that he is detaining or enjoying the property at sufferance, which is the real contention of the complaint?

" 'Detention, according to Escriche, is "the tenancy or possession of a thing in the name of another" and a detainer, according to the same authority, is "one who holds or possesses a thing in the name of another, as a pawnbroker, a depository and others, who may resort to the courts against those who disturb their detention." '

"Further on, in *Correa* v. *Correa, supra,* the Supreme Court said:

" 'It is enough to consider the meaning of the words detention and detainer at sufferance to conclude that in using them the legis· lators intended to include therein all possible kinds of relations BETWEEN THE OWNER OF THE PROPERTY AND THOSE WHO HAVE ENTERED INTO POSSESSION THEREOF AND HOLD IT IN HIS NAME BY VIRTUE OF A CONTRACT OR BY MERE TOLERANCE, or as trespassers, whether paying rent or not, and who could not be included in the words tenant, settler, lessee, administrator, agent, keeper or guard, AND THE EVIDENCE IN THIS CASE HAS NOT SHOWN ANY SUCH RELATIONS BETWEEN THE PLAINTIFF AND THE DEFENDANT, or any other relation derived therefrom or independent that could be considered as coming within the spirit of the law.' (Capitals ours.)

"The foregoing doctrine is perfectly applicable to the case at bar, because it has been shown therein that the defendant has been in possession of the Olga estate, with his mother·in-law Cruz Montes, *long before its execution and adjudication to the Municipality of Ponce.*

"The possession of the Olga estate by defendant Monserrate Collazo began at the time the estate belonged to Cruz Montes, and at that time the Municipality of Ponce was not entitled to the possession of the said estate and there could not be any sufferance or consent of any kind on the part of the municipality for such possession by the defendant."

The Municipality of Ponce brought the present appeal. It assigns two errors which it urges were committed by the trial court: in dismissing the complaint, and in holding that the doctrine laid down in *Correa* v. *Correa, supra,* is applicable in the premises.

■■ That according to its title deed the plaintiff municipality is at present the owner of said estate and that the defendant is in possession thereof without any contract with the municipality, against its will, and without paying any rent or consideration, are admitted facts. The defendant, however, alleged that he was living on the estate with the consent of its owner Cruz Montes who was prosecuting an action against the municipality for the nullity of the mortgage foreclosure proceedings by virtue of which its title was conveyed to the plaintiff, it having been shown at the trial that Cruz Montes—who still lives on the estate—called to her side her son-in-law, defendant herein, long before the commencement of the foreclosure proceedings and that the action for nullity is pending in the District Court of Ponce.

It is really inconceivable that the action of unlawful detainer was not prosecuted against Cruz Montes, or against her and Monserrate Collazo, if for any reason it was deemed necessary or fit to do so; but we are dealing with facts and it is upon such facts that the appeal must be decided.

Leaving aside, for the moment, the action for nullity, it must be acknowledged that the plaintiff is the present owner of the estate, and therefore, entitled to the enjoyment of its possession as against all the world and consequently against the defendant.

It is alleged that, notwithstanding this, the plaintiff can not eject the defendant inasmuch as his case is not covered by the special law on the matter.

Section 2 of the said law, which is transcribed in the opinion of the trial judge just copied, specifically authorizes the ejectment against "tenants, settlers and other lessees" and against "administrators, agents, keepers, or guards placed in charge of the property by the owner thereof," which authorization does not indeed cover the present case; but further on it provides that the ejectment lies against "any other person who retains the material possession thereof or enjoys the same by sufferance, without paying any rental or other consideration whatever," and in this latter provision, we think, there may be included any other privity like the one which arose between the plaintiff and the defendant. This conclusion is supported by the very decision in *Correa* v. *Correa, supra,* in the same paragraph thereof cited in his opinion by the trial judge, if stress is laid not only on the capitals used by said judge but on everything therein contained.

It is admitted that the defendant never paid rent or consideration. Is the property held at sufferance as regards the present owner, that is, the plaintiff? Let us see.

In *Cerra* v. *González,* 29 P.R.R. 270, 271, cited in *Correa* v. *Correa, supra,* it is said:

"The appellant argues that the expiration of a contract and a detainer at sufferance are distinct legal conditions and cites Escriche, who says that detainer at sufferance 'in its strictest sense is a loan revocable at the will of the lender, and is also taken to mean everything of which posession is held in the nature of a loan and at the owner's will; thus possession is called *at sufferance* when meaning that such possession is nothing but the effect of the tolerance of the owner and can vest no right in the possessor'."

The appellee insists that the detainer at sufferance is a contract which does not appear to have been entered into in the instant case, and therefore the ejectment for detainer at

sufferance does not lie. He quotes from the treatise "Juicio de Desahucio," Chap. VI, Detainer at Sufferance, p. 39, by Román Bonsoms y Gené, as follows:

"Detainer at sufferance is a contract whereby a thing is granted by its owner to another to be enjoyed at the will of the grantor.

"Formerly detainer at sufferance was held by jurists to be a mere act of liberality, but upon examination of all its phases it has all the requisites of the contract and today it is so considered by text writers.

"Detainer at sufferance differs from commodatum or loan in that the bailor or lender can not demand the return of thing lent until the expiration of the commodatum, whereas the owner of the thing detained at sufferance may demand its return at will, and this is why some text writers define detainer at sufferance as a loan that may be called at will by the lender and likewise anybody in possession of a thing loaned that may be called by its owner is commonly said to be in a precarious state, meaning thereby that such state depends upon the tolerance of the owner thereof."

The following is also taken from "Estudios de Derecho Civil," Vol. 4, p. 864, by Sánchez Román:

"Detainer at sufferance is a modality of the commodatum. . .

. . . . . . . . . .

"This contract existed in Roman law; but Castilian statutes prior to the Civil Code have disregarded it. However, it sometimes is entered into as a contract and is governed by the principles and provisions of the commodatum, except as regards the liabilities due to fault on the part of the parties."

Manresa, however, in his "Comentarios a la Ley de Enjuiciamiento Civil," Vol. VI, p. 27, 3 ed., attaches a wider scope to detainer at sufferance, so wide that, by adopting the same, the particular case under consideration might well be included therein. Says Manresa:

"According to the 'Diccionario de la Lengua' (Spanish), by detainer at sufferance is understood 'that which is only possessed as a loan and at the lender's will.' Under this legal meaning of said term, anybody who, without being actually the owner, or usufructuary, or lessee, or able to produce any title authorizing him to enjoy the state, whether rural or urban, possessed by him, other than the

tolerance or sufferance of the actual owner thereof, without paying rent or consideration, is held to be a tenant at sufferance, and there lie as against such person, no matter who he may be, ejectment proceedings at the discretion of the owner. . . ."

As regards Cruz Montes, the former owner, the defendant was a tenant at sufferance, and logically and as a matter of fact and in relation to the new owner, plaintiff herein, he is still a tenant at sufferance. The defendant could only retain the possession of the estate if the new owner continued the tolerance of the former. It did not, and then arose the possession against the will of the owner as alleged in the complaint.

The tendency to widen the scope of the detainer at sufferance is well stated also in the "Enciclopedia Jurídica Española" by its collaborator Víctor Cobián. Its origin and history are set forth therein and then upon analyzing the "Nature of this Contract," it is said:

"It is not an easy task to determine the same and specially nowadays owing to the tendency of the legal doctrine to extend the scope of the detainer at sufferance to those cases in which one is in possession of a certain thing without being entitled thereto. Classic writers used to say that there was involved a *Concessio rei seu possessionis, quam ita impetranus, ut tandiu duret quandiu concedenti placuerit,* assigning thereto three characteristic phases: one, the granting of the use of a certain thing; another, upon the request or entreaties of the recipient, and it is so suggested by the etymology of the very word *preces;* and the third, for so long as the grantor pleases. . . .

"Of course, as a rule it was a matter of liberality obtained by supplication, and, yet, nowadays such is not the case, for, we say again, in those cases that come before the courts as a rule, the source of detainer at sufferance is neither liberality, nor supplication on part of the detainer of the thing, but an actual possession which if it was legal at the start, it was not so afterwards, and for lack of a more adequate remedy to deprive the possessor thereof, recourse is had to the ejectment, assuming a detainer at sufferance. . . ." Id., p. 339.

But even if we held that the present case could not be brought within the strict meaning of detainer at sufferance,

we find that the law on the matter in force in Puerto Rico embraces another form of possession without valid title in opposition to that of owner, as ground for ejectment. We mean retention. "The action of unlawful detainer will lie against . . . . any other person who retains the material possession . . . ," says the statute. And as regards retention it seems to us that no doubt whatever can be entertained.

It was alleged in the complaint that the defendant "was retaining the possession precariously . . . . . without being entitled thereto," and it was shown at the trial that the defendant was on the property merely by the consent of the former owner. Such consent became invalid when the ownership right of the person who gave the same ceased. Somebody else became the owner and this latter owner, the plaintiff herein, requested him to vacate the estate. He failed to do so and from that moment he was retaining the material possession of the immovable and hence the ground for ejectment.

In the court's opinion there is transcribed from the opinion in *Correa* v. *Correa, supra,* a quotation from Escriche made in *Cerra* v. *González, supra,* which does not fully explain the meaning of retention (*detentación*). Some years afterwards this court, in *People* v. *Giorgetti y Co., Ltd.* 46 P.R.R. 59, 67, 68, said:

"Nor does it appear from the evidence that the defendant is detaining the material possession of the property within the meaning of the word 'to retain' as used in the act establishing unlawful detainer proceedings. Regarding the legal meaning of the word 'detention' (*detentación*), we transcribe below what the *Enciclopedia Jurídica Española* states in this connection, at page 907, volume 11:

" 'In the *Dictionary* of Escriche, *detention (detención)* is defined as "the holding or possession of a thing for another," and by the noun *detainer (detentador)* is meant "a person who holds or possesses something in another's name, as for example, a bailee, a depositary, and others who have a standing in court to ask for relief against the persons who disturb in their occupancy.''

" 'That is not, however, the exact juridical meaning, nor even the common understanding, of the term which is the object of this article. *Detention (detentación)* properly means in a grammatical sense, the occupancy or possession of a thing or right, which is not to be confused with the *natural possession* defined by section 430 of the Civil Code; juridical relationships may be and are derived from this natural possession and not from the actual occupancy; and if this concept is further restricted, by *detention* is frecuently understood, in ordinary language and in the laws, the action and effect of a person withholding without right something that does not belong to him.

" '*Detentare* (as Bekker points out with good reason when he complains of the defects of the Roman possessory terminology) and its derivatives *detentio, detentatio, detentator,* are very rare terms; in the few instances that they appear, they are used incidentally and with reference to other matters; but never exclusivly in connection with the possessory theory; *detentator* is only found twice, and then in the Code, not in the Digest. It may be vaguely inferred that, although *detentio* means the act of *tenere* and is therefore different from *possessio, detentatio* and its other derivatives only mean a retention and conservation of a thing regardless of the justice thereof, the greater part of the time entirely without justification.'

"We agree with the concept of the term detention as expressed by the *Enciclopedia Jurídica.* Natural possession creates juridical relationships which do not flow from the strictly material possession. The natural occupancy of a thing carries with it the actual possession, but the latter may exist independently of natural possession. The act of an intruder, for example, in taking a thing results in an actual possession which creates no juridical relationships. The unlawful withholding by one person of the possession of a thing belonging to another constitutes a detention within the meaning of that term as used in the Unlawful Detainer Act."

We have considered the appeal without paying attention to the action for nullity alleged and shown to have been commenced by the former owner by whose consent the defendant was living on the estate. We will now study the same, bearing in mind the existence of said action.

██ Was it shown thereby that notwithstanding the status as owner of the plaintiff the defendant was justly in posses-

sion, as happened in *People* v. *Giorgetti & Co., Ltd., supra,* and *Correa* v. *Correa, supra?* Did a conflict of titles arise?

If the latter question could be negatively answered, the former question shall also be negatively answered.

At the trial the defendant confined himself to show the existence of the action for nullity and said through his counsel: "We do not submit a conflict of titles but . . . . . a question, a state of facts: that the defendant is living in Cruz Montes' house and that he is living there by leave of Cruz Montes who is prosecuting an action precisely in regard to this same estate." (Transcript of the Evidence, p. 34.)

The record of the action forms no part of the transcript. We do not know which are the causes of action alleged. Nothing appears as to their merits.

Under such circumstances the case applicable is not that of *Colón* v. *Colón,* 51 P.R.R. 95, but that of *León* v. *Alvarado,* 24 P.R.R. 654, in which it was said:

"As to the second error, the fact that the appellant has moved to set aside the judgment in the action in which the sale and conveyance of the house was made, is no ground for holding that León Lugo's title is not sufficient to support a judgment in his favor in an action of unlawful detainer, for until the judgment and sale are set aside the plaintiff's title is good and he will continue to be the owner and as such may compel the appellant to vacate the house in question."

No weight, therefore, can be attached to the allegation and proof of the pendency of the action for nullity. The unlawful detainer action must be determined as if the said action was not pending. And we already had concluded that in such case, as the defendant is retaining the material possession of the estate without being entitled thereto, the ejectment lies.

Therefore, the judgment appealed from must be reversed and the one that should have been entered by the district court is hereby rendered.

Mr. Justice Wolf concurs in the result.